So go right ahead sir May it please the court payrolls and for pellant Dustin Henderson I'd like to reserve about five minutes for rebuttal if I may and I would like to address Both issues that I raised both overarching issues that I raised in my brief the substitution of counsel is Mr. Henderson Relied serially on court-appointed counsel you he really had for the first one and then at trial he had The counsel he didn't like as well as an observer counsel and then afterwards yes you but he also had the resources to Obtain a private counsel his family did for A consideration of the dog bite case I I think so Why was he unable to to privately obtain assistance If he could get a private counsel regarding the dog Your honor. I I don't think that I believe that the record reveals that his family consulted with a civil lawyer And the civil lawyer advised either directly or indirectly to stop talking to his court-appointed attorney I don't think there's any other evidence in the record to suggest that he actually retained a civil lawyer to pursue a dog civil dog bite case Or that he had the financial means to hire a lawyer for the criminal case or the civil case So I'm assuming he's a if we assume he's entitled to a public defender because there was a court finding of that at some point right and presumably and that it was unchallenged and that he I I'm assuming But I don't know if this is true That perhaps a tort attorney would have been available on a contingency fee basis or or some such thing I think we're all suspecting that I don't mean that in a pejorative sense, but okay Nevertheless he was that what we have to grapple with is whether there had really been a breakdown in communication and and I'm not sure what We do with the information that a civil attorney who's orbiting out there somewhere in this fact pattern was apparently Advising him perhaps perhaps because of the dog bite case not to talk to the court-appointed attorney. Well, how does that factor in? I don't Frankly I don't know that it factors in very Significantly other than it demonstrates some good faith on his part that he was Not just simply being obstreperous or obstructionist, but he would he was receiving some advice along those lines It's to me that it's a that's a choice right that he's he's just choosing not to Communicate with her because we certainly have a record that indicates that she assured the court on several occasions that she was willing to Work with him and he was the one saying not going to do it. So it seems to me that it is significant I don't mind to hijack your question judge. Well, yeah And then at the end of the trial the judge compliments him. Mr. Henderson on cooperating during trial During trial. Yes, it's apparent to the judge that they were speaking somewhat during the course of the trial itself But even if even if his actions were taken in good faith Because they they were in reliance on the civil counsel's advice Wasn't the inability to communicate attributable to him not to substitute counsel Well, if you're in other words, I'm not sure his good faith Means that there's the kind of breakdown in the relationship that would require the judge to appoint Yet a third lawyer with whom he wouldn't communicate Your honor, let me let me put it this way so he the thing is that I think what's important about this case and what distinguishes it from other cases is that Really before so he had the first lawyer and that that Relationship ended Interestingly, it did not end for the same reason in other words, you know, there's a short transcript of that hearing Judge Hernandez essentially agreed So there wasn't a great deal of To be fair judge Hernandez didn't say there was any fault on the part of the lawyer Judge Hernandez does did what good trial judges often do which is look. I don't want a problem You've got it. You don't like this lawyer. I'll give you a new one Let's see how that works and that didn't work either And so my point was just that the problem was not that with respect to the first lawyer The problem was not that. Mr. Henderson was failing to communicate with that lawyer and so I just make the point that it's not as though we're Seeing a pattern from him of just going through multiple lawyers and not talking to them This is unlike the situation for example in Roston which the government sites were that defendant in that case had gone through three previous lawyers and had Was now on his fourth lawyer and was refusing to communicate with that lawyer It was just a couple weeks before trial before he tried to get rid of that one And so I would say that I would have to admit that it does seem that it was it was mr Henderson that was not wanting to communicate with his lawyer But I think you have to dig just a little bit deeper there and and see that The reason he was not wanting to communicate with his lawyer is because fundamentally he didn't trust her Well, you do have to dig deeper And I'm trying to figure out why we should look at this transcript of him and fault the district court for not digging deep enough Because he certainly said he didn't trust her and that's a you know, that makes our antennas twitch. Of course This is a very important right we're talking about But but when they dug deeper it sounds to me like what she was saying what he was saying is that he didn't agree with her legal strategy He didn't like the motion. She had filed He was encouraging her to file a different kind of a motion and she thought in good faith Because she's got a duty to the court to that that she couldn't file the one he wanted He did seem to be quite confused about the legal issues that were really before the court. So that's a choice He's making right Well, there's and there's a lot of oddities to those positions that he's taking but there's also a kernel of kernel of reasonableness He wanted to raise an issue regarding the the adequacy of the the legality of the arrest itself the suppression motion focused on the search of the Trailer house. He wanted to raise an issue regarding whether they had probable cause to arrest him in the first place and to hold the house pending the search warrant which Was not directly raised as part of the the suppression motion. So although there were a lot of idiosyncratic and unusual Legal theories that he put forth there was there's some kernel of Reasonableness there, although it was kernels were going to be present No matter who represented him those kernels that were based upon his I think it was high school knowledge Right of the facts are in his insistence that he hadn't been properly Arrested under arrest because the officer told him I don't know if you're under arrest You know that that colloquy I'm sure you know it very well that wasn't going to change to Matt no matter who Represented him and the judge said in terms of in terms of following up on this trying to explain to him So, you know the things you're saying don't make sense. You need a lawyer Right. She's willing to represent you. So what's your best shot that that was an Incorrect ruling, please. I Don't know that it's it's I don't know that it's established or Reasonable to to infer that no other lawyer couldn't could have gotten through to him on those issues Again this this is the first We don't know really what happened with lawyer. Number one. So this is lawyer. Number two, and It very well could have been that with a new lawyer Either that new lawyer could have seen something that the first that Ms. Preeny Abbott didn't see or that new lawyer could have persuaded. Mr Henderson that there's there's nothing there. I don't think we can conclude that that it wouldn't have helped Dealing with an ineffective assistance of counsel claim that right occur later Although I must say in and I mean include current counsel in this In his statement that it appears that mr Henderson's gotten very good representation at public expense throughout this including on appeal but But the issue isn't whether or not Different counsel might have made a different decision. The question is whether or not different counsel Whether or not the relationship had broken down Irretrievably and whether or not there was any real prospect that a different counsel would end up with a different fate and Judge Emmer got right or wrong Held a hearing talked to people thought about these issues and concluded that This wasn't the case in which New counsel was required a second time. So why was that an abuse of discretion? That's that's sort of what we're all hinting at but I'm having having trouble figuring out what what she should have done differently I think when it comes to judge Emmer gets ruling that she made six days before the trial date Is there there's actually a factual error that she she relied on and that was that? In her ruling she stated that judge excuse me Mr Henderson was now agreeing to to speak with with his lawyer going forward and when you look at the transcript of that of that Pre-trial hearing six days before trial. I don't think you can really draw that conclusion. There's one line I think that the government sites where she asked are you willing to speak with your attorney? And he says yeah, she promises to keep keep her promise But then on that very same page of the transcript he goes back to saying I'm only going to talk to her if it pertains to sentencing matters and she's prepared to enter a no-contest Plea and just get move on to sentencing. That's how bad The relationship has deteriorated Either that or he's recognized that his face is on the video committing the robbery. So that's a pretty tough fact for him I agree with my colleagues by the way that you've prepared really excellent brief and that the question We're all focusing on is that was very well established here, right? And we're like trying to figure out if there was really a breakdown in communication and for me the tough that toughest part is a he He's he there's an indication. It's that he's saying. I don't trust her. We take that very seriously There's sort of two avenues I think one is that he didn't agree with her legal strategy and that doesn't Persuade me to be candid. The other is that he does say a couple of different times She hasn't got my side of the story. She's not listening to me. She's not hearing So if we had a record that showed that she really hadn't met with him It seems to me that that would be problematic. Can you can you talk about that? What do we get from the record about the council meeting with him? Well, they met You know, I mean he she says I think I think this was in the February 24th hearing by this time The motion to suppress had been filed And she did say that they had met for several hours or talked on the phone or communicated Leading up to that point and so that they had communicated had that happened prior to the motion being filed According to my understanding of what she was saying, yes, I think so yeah, I think so too unless I've misreading the record so and that sort of cuts both ways because That that shows that he also I mean he they must have been having a conversation that he participated in so he wasn't completely Non-communicative with her from the get-go and they must have had a conversation about what the suppression motion would would look like and then after the motion is filed and He's obviously expressing disappointment about what's in there both legally and factually in terms of hospital photographs and things like that so You know, they they talked but then there was there was a breakdown again and really the breakdown in the communication was pervasive throughout the the relationship and I would say most importantly Leading up to the trial Where they really weren't? Communicating and so counsel was not prepared to Take his direct testimony And those sorts of things and I addressed that in my brief as well as I as far as how that played out so in all your I Would just say that because he did not demonstrate some previous pattern of just firing lawyers and not talking to them He really should have been given another attorney at any of these places, but especially you know before trial And I know that that sounds last-minute ish, but the problem had existed really it had been discussed previously Mr. Mr. Henderson said I'm not going to talk to my lawyer when he was before judge Henderson judge Hernandez back in February and That that turned out to be true. They just they didn't communicate and so they were unprepared Just briefly. Oh, sorry. I was gonna say you're running out of time I was just gonna check to see if my colleagues have other questions Right and there's not a whole lot in the record said about that except that I think there's some mr. Henderson expressed that that that the new lawyer was influenced or Poisoned I think was his word by the lawyer that he had the fundamental problem with and so So Sir, you said you wanted to I cut you off I didn't mean to it's a little tricky to do this by video because one of my colleagues is now behind me But you said you you wanted to go touch one on one other point before we hear from opposing counsel well, I just didn't want to lose sight of the the other issue regarding the admissibility of the The the video showing the the attack by the dog, I think that's very important to mr. Mr. Henderson in terms of what his fundamental defense was Is that a confrontation clause issue that you're raising there I do raise it as such yes, all right I Need that so when you come back we'll put two minutes on the clock because we've taken a bunch of your time with our questions and Appreciate your argument Let me just make sure here. We're gonna do a bit of a sound test if you come to the podium Let's make sure that opposing counsel can see you please You All right, there she is can you see opposing counsel sir? Okay, great. Go right ahead Good morning, and may it please the court? My name is Cassidy Adams, and I'm here on behalf of the United States from the District of Oregon We're asking this court to affirm the defendants convictions in this case And I'll deviate from my prepared remarks and just jump right in into some of the questions The place that was robbed is variously named in The lighthouse deli the lighthouse pub that court refers to it as a convenience store just for the record What is it? It has several purposes. There's video poker games when you go into it, and then there's also the name of it I believe it was lighthouse pub And people can buy drinks there and snacks and cigarettes Okay, so the part on the Failure to get counsel of his choice, or what was there a breakdown of communication? Is the first issue that we're trying to hone in on and what I've said at least speaking for myself Is that the you know the most concerning thing? I think that we've got is him saying that the two different things I've lost faith in her because she's not listening to me, and she's not talking to me What's the record on that? Your honor the record shows that miss Perini Abbott, and I'll focus mainly on her although. We also have mr.. Kaufman that helped bolster that relationship Miss Perini Abbott made significant efforts to talk with mr.. Henderson as well as sent him letters Starting leading up to her filing the motion to suppress Kind of start right there because that's where things kind of went south a little bit as far as mr.. Henderson's view Miss Perini Abbott at the February substitution hearing said that she had met with mr. Henderson for several hours prior to filing that motion to suppress and also when you look at The Declaration that chief excuse me counsel, but he said repeatedly She's not got my side of the story by that did he mean you know it's not reflected in the motion He's didn't like the motion He thought it should be challenging a different a different point or is it the fact that he made those statements earlier And I've got that out of chronological sequence I'm sorry could you repeat your question? He said in the record. I think he said it pretty Persistently repeatedly she doesn't have my side of the story She's not getting my side of the story and and I guess my question boiled down is did he make that statement before and after? That motion was filed I believe he made that statement several times throughout the course of the case prior to the motion being filed there was a Substitution hearing in November of 2021 at that time mr.. Henderson said she's in no way prepared to write motions She doesn't have my side of the story At that time mr. Henderson had sent pretty long letters to the court that the court Shared with Miss Perini Abbott And that's in volume 5 of the record where he lays out what his side of the story is and what his view of What happened is? Additionally she had mr. Henderson testify at the suppression hearing about The events specifically regarding the arrest, but he told his version of events about what happened She in her declaration supporting that motion to suppress told the court mr. Henderson has recounted to me The events of the arrest and if he were called to testify This is what he would say so she indicated my question about right when he says she doesn't have my side of the story It's hard for me to reconcile that right and We don't have an affidavit This isn't a 2255 hearing, but we believe the record supports the fact that Miss Perini Abbott did in fact have mr. Henderson side of the story based on the communication she had and to the extent that he had information that He had not shared with her that was Because his refusal to communicate which is what the defendant in Roston did What the Ninth Circuit found is the defendant in Roston? Told The court that he had important information to share with his attorney But then refused to tell his attorney what that information was and then use that refusal to attempt to get a new lawyer And that's exactly what we have here, but leading up to trial one of the things Miss Perini Abbott said Told the court at the pretrial conference was if mr. Henderson gives me new information Before Monday, you know before the trial starts that's significant that requires more information I will notify the court and let them know so she told the court that Inference being that she might seek a continuance or need more time or something Yes, your honor if there was something material the other thing that sort of bubbling around in this record That's a little hard for me to Get my arms around is is his statements and and she relayed them to her that he thought the case was moving too fast And much more familiar with defendants complaining that cases are moving too slowly And I don't know the extent to which that was ever tied to the separate dog bite what I'm referring to is it this What looks like a looming? 1983 dog bite case Is that ever tied up in the record somewhere? Did I miss that? Why did he think it was going too fast? Do we have that? I'm not sure why mr. Henderson thought that your honor He does say that throughout the record and we can the court consider that when determining the timeliness When conducting its inquiry as to whether substitution of counsel was warranted Because I'm sorry, I'm not following you. We should consider his statement that he thought it was moving too fast when we consider the timeliness of what of his requests to Have a new attorney and basically start the clock over and for example in one of his pros, I mean he was delaying it Yes, your honor. Yeah. Yes. Yes, it was or seeking to delay He was seeking to delay and at the same time saying this. Yes. Okay. Got it yes, and what the Ninth Circuit has held in the prime case is that you know requests for new counsel cannot be Grounds for delay uses a delay. Yeah, but there isn't really indication. He was doing that. He never said that he did say He thought it was moving too fast. And then he And I guess I drew a different inference that had something to do with this other outside lawyer telling him don't talk to your criminal defense attorney, but Maybe maybe I've drawn an incorrect one. I don't know that ever gets tied together for me on this So am I correct in in thinking that what is not before us? Today is the propriety of the judge's ruling on the motion to suppress What is in front of us is the The your friend is attacking the judge's ruling on the motion in limineum I'm not putting more evidence in but the the evidence that was the subject of the motion to suppress Is not being attacked on appeal. That's correct. Your honor. Mr. Henderson is not challenging. Judge Hernandez is ruling on this motion Does that have any? bearing on The council issues in other words, I'm trying to figure out once you find All this evidence and it's and it says it's in his place What communications after that point Would have been relevant to rebutting that does that help me? In other words, I'm really wondering in this case whether or not. Mr Henderson sort of wisely said well now that I lost the motion to suppress I Might as well stop talking to my counsel because I'm going to be convicted And is there anything in the record that's that that supports that conclusion I don't believe so your honor miss Perini Abbott Filed what she believed to be a meritorious motion and in part she was successful Because judge Hernandez pressed the the stuff that was found in the protective sweep And there was nothing found in the protective There was a search warrant that was signed and then officers executed that night but Mr. Henderson became frustrated at that February substitution hearing which was after she filed a motion to suppress He said he wanted her to add the false arrest Allegation to that motion to suppress the hearing happened in March and then you also have the pretrial hearing Substitution hearing at that point. Mr. Henderson Was also being assisted by mr. Kauffman so any frustrations perhaps with miss Perini Abbott were mediated by mr. Kauffman see I guess what I'm asking about it and I want to break this down It does appear there was communication before the motion to suppress the record that you suggest talks about that It may be that after the motion to suppress didn't turn out the way Mr. Henderson wanted there may not have been as much communication thereafter. So I'm trying to figure out where in this relationship the communication stopped because it's pretty clear there was communication up to a point and There was a trial and there was communication during the trial as the judge said I want to compliment you for your communication So I'm trying to figure out where where it stopped and why and maybe the record just doesn't tell us There were periods when there wasn't communication between mr. Henderson and miss Perini Abbott But was that all post doesn't that pop up after the motion is found? He didn't like the theory that he saw in the motion the arguments that were raised There is what I understood this record debate. Is that a fair? What he said in the February hearing was that he didn't want her to take the motion back He told the court I never wanted miss Perini Abbott to take it back I just wanted her to also add that I was falsely arrested and he wanted her to add that claim to it Which is not a claim for relief in a criminal case We understand that it just seems to me. I think you're saying that the answer to my question is yes So both of my colleagues well now there's three of us trying to probe that there were times when these folks were Communicating and times when they were not and it seems very clear that there was communication leading up to the motion. Although Somewhat perplexingly he says throughout she doesn't have my side of the story But at the time of the motion, she thought she did it seems pretty clearly the case and then it's also seems clear He didn't like the motion before it was even ruled on right? He wasn't happy with the theories that presented there He thought they were incomplete. Do I have that wrong? He wanted additional theories added. He wanted the false. Yes, right counsel Yes, he wasn't satisfied with the motion. He wasn't satisfied that more theories weren't added to it in addition to these are not trick questions I'm just trying to I think the answer is yes He didn't he wasn't happy with that motion before it was ruled on. Is that right? He wasn't fully happy with it. Your honor I'm gonna take that as a yes Okay, he agreed he agreed with miss Perrini Abbott's theory of what she had filed So and your honor just going to mr. Not when the communication breaks him when he stops talking to her There were several there was Before after the motion was filed there was that February substitution hearing and then at that time, mr. Kaufman was appointed And miss Perrini Abbott and mr. Kaufman didn't excuse me. Miss Perrini Abbott and mr. Henderson didn't have much communication leading up to trial But she had been trying to communicate with him and she told the court That's what I'm trying to I'm trying to get a timeline in my mind here There's obviously a troubled relationship throughout but at least if we're talking about communications There's evidence that there were communications leading up to and at the time of the motion to suppress. I don't know what mr Henderson's motivation was although he testifies later that it seems to me that after the motion is suppressed He doesn't want to talk to took appointed counsel anymore the record seems to reflect that she tried to meet with him and talk to him, but he didn't want to and Then there seems to be some improvement on the eve of trial particularly with second counsel being put in it Is that a fair summary of of sort of the timeline? Essentially your honor. Yes, and where's our where's it wrong? So mr. Kaufman was able to at the pretrial conference. Miss Perrini Abbott informed the court the mr Kaufman had been able to meet with mr. Henderson Well, she'd been able to meet with him she just wasn't able to get him to communicate with her, right He was refusing calls and refusing visits and she also Had tried to inform him about new discovery and he was sending the mail back Returned to her conceded was attempting to communicate and he wouldn't communicate. Yes, mr. Kaufman actually communicated with him. Yes I'm sorry. Can you mr. Kaufman actually communicate with mr. Henderson? Yes, he did and mr Henderson also it had sent mr. Kaufman a letter Informing mr. Kaufman of what he believed to be new misstatements in the police report and then mr Kaufman on the morning of trial announced that he had been able to meet with mr. Henderson and was prepared to meet with him And what what's the What's the legal relevance of all that? So let's assume mr. Mr. Mr Kaufman is appointed as second counsel or whatever whatever the term is Mr. Henderson is not communicating with Originally appointed counsel, but he is communicating with second counsel who I think is providing the information from the communications to first counsel Those are facts. Tell me what the legal significance of that is So what you're considering is whether the conflict was so great that it resulted in a total lack of communication Preventing an adequate defense and here you have communication. He's represented by two lawyers. And so you have him You know not not liking miss Pruney Abbott and not Wanting to meet with her but he is talking with mr. Kaufman and that goes go between sort of yes, your honor And mr. Kaufman is able to help bolster that relationship and the two of them together Were able to give him an adequate defense at trial and they were able to take what he Put forth and some of these letters to the court in volume 5 that you can see and some of these legal theories They were really able to take that and turn it into a viable defense ultimately, he was found guilty, but Mr. Henderson got a terrific defense and when you look at miss Pruney Abbott's cross-examination of The officers and what she was able to get out of their testimony. I'm running out of time so I haven't even gotten into the arrest, but when you really look at what she was able to get out and What she was able to put forth about Holes in the government's case. It was really well done. It was professional and it also was very compassionate towards. Mr. Henderson and It showed Remarkable ability to give him that defense counsel I have a different question and it's one that judge walk and I both were trying to follow up with Opposing counsel and that has to do with What we should make of this What he what he says that he was was being advised by a civil attorney not to talk to his defense counsel How does that factor in or does it factor in? We don't have a record of a civil of that other than mr. Henderson's own statements Yes. Yes, but what should we do with that? I Think the court needs to consider what the findings the district court made but The Findings that the district court made regarding mr. Henderson and him needing to work with counsel and his refusal to do so I was sitting there trying to find it in the record and I was not able to find the page But at one point judge Emmer get inquired with mr. Henderson. Are you hiring private counsel? And he said no And she said okay. Well, this is your lawyer. You need to this is a lawyer. You need to interact with Well, he wasn't hiring private counsel in the criminal case It's easy to imagine that he would have been able to get on these facts to get somebody to accept a contingency fee Engagement to pursue the 1983 that's not in front of us and I don't mean to suggest otherwise But I was wanting to focus on You know, we're looking to see whether this was volitionals. He's just choosing not to Participate that's one thing and I think that the trial court was was convinced that that was right He had a lawyer had a certainly very competent lawyer. He was choosing not to Talk to her because she was sure willing to talk with him So I'm just wondering and I think at least another one of her judge up here is wondering What did we do about the fact that? He says that at one point he said that was because he received that advice from from a civil attorney Does that factor in I? Think you can you consider that factor when determining whether it was volitional. I think that you're correct and then once mr Henderson was told by the judge. I think it was judge Emmer get You know, this isn't a civil case. This is your attorney You need to communicate with her. You can also take that into consideration, but I think if mr Henderson had been getting information from somebody else That's one thing the court can consider but I will say there's no record of a civil attorney I did a search and pacer just to see if there was a civil case filed with mr Henderson and in federal court prior to today and I I did not see any such civil case that has ever been filed or any Civil attorney representing him. Okay, you're opposing counsel is going to talk about the motion and limiting I I believe in his rebuttal time. So I want you to address it a little bit. That's okay Briefly, please. Okay, because we've taken you dramatically over your time. So yeah, yes briefly address We agree that the district court with the dis what the district court did in this case The she carefully considered what the evidence was that the defendant was wanting to get in And she found it to be Minimally probative she also found that that evidence the video of the rest would be very prejudicial to the government And but she allowed miss Perini Abbott to inquire about That use force was used and that mr. Henderson Could file a civil claim and she also allowed The officers to talk about how mr. Henderson had been calm prior to being arrested So those facts were able to be brought in the court correctly drew the 401 403 line And mr. Henderson was able to make a full-throated defense with the evidence that he got in He didn't think so it would and it was certainly when you say full throat throated It was watered down somewhat wasn't it? I think the standard for confrontation is whether the jury really had an opportunity to to recognize the witnesses reasons or motivations perhaps were For his or her testimony, but you're not arguing that his the 401 403 analysis was It doesn't seem very black and white to me Defense counsel elicited the facts that force had been used right and that they had been accused of an excessive force I think and I think at one point even that they Recognize that there could be a civil suit something like that Right, but no photos the photos didn't come in and there wasn't indication that he'd been sent to the hospital right That's correct, so what when we could talk about 403 of course We're talking about all of its prejudicial to the government because for the reasons We don't need to go into today, but but why was it? Why would it have been unfairly prejudicial to the government? Well, it would have shown it would have gotten into an issue that Would involve potentially civil tort issues which the court did not want a mini trial or a sideshow That's prohibited by rule 403 Wasn't the judge's reasoning on the other side also that the police would testify about What their subjective beliefs were about his condition? Yes, your honor and the what the government proffered at the pretrial conference would be if that evidence had come in that the officers would respond and say that they did not They didn't want not want this to be a suicide by cop situation which goes into mental health and all sorts of other issues And the mini trial yes and a mini trial and I in our 28 J letter we cited It's an unpublished case, but it's United States versus Washington. It's another kovat era Ninth Circuit case with similar situations where the court Ninth Circuit excluded agreed with the exclusion of a similar video I'm gonna cut you off now because you really are six minutes of your time That's largely our fault, but we appreciate your argument very much. Thank you. Thank you. Well, we'll hear from opposing counsel Thank you, if I could just pick up on that that is the evidentiary issue Your honor judge Kristen a moment ago You said that there was evidence did come in that there was excessive force the word excessive was not used in testimony You're right. I As soon as I said it I realized that but I've looked at this very carefully hence my description of it being watered down So, what is it that you think put that over the line for purpose of the confrontation clause claim, right? What's your best case here that he was really deprived of? What the jury did here was that there was force used. Yep, and that the officers Were aware that there was some possibility of civil liability There was no measure of how much force was used There was no measure of what what was the actual risk of a real civil liability But the police officer was questioned and he admitted that there was a risk of a civil suit They reckon because of the use of force the jury was a risk of a civil suit Without any indication of what might what what that suit would be based on other than that force was used But no indication to tell the jury that it was Any clue that it was an unlawful use of force or that a jury some other fact finder might conclude that it was unlawful What about the closing argument at ER? five seven four seven five The council's closing argument seemed to me to be quite fulsome Yeah, and I think I I don't have that Anderson was sitting peacefully on the steps calmly and they still use force to carry out that arrest You heard both of these officers also admit that he could bring a lawsuit against them for the use of force in that arrest And so forth So it seems like the jury certainly had reason to recognize the his argument was that there was a motive And she argued that they we don't know what happened when they were in there and an opportunity to leave evidence I think that it's pretty clear. It seems to me. Yeah, but just just given the I mean, we're the defense is pretty bold. Obviously I mean we're claiming that these officers went in and planted evidence and in order to put forth a bold Defense like that. I think the jury really needed to understand what what happened Why why would the officers do that? Well, they're not going to do that Just if they you know, they use force to take somebody into custody who maybe doesn't really need to have any force but they might do it if they sicked a dog and mauled that that mauled the defendant and Put 40 stitches in his arm and then hit him over the side of the head and pushed him to the ground As is all depicted in that video and so I The the bias really didn't come through without the jury Understanding what really happened and what what the degree of force was that was it's why I characterized my question to opposing counsel as watered-down I think it was watered down and then you have the problem of his the inevitable outcome given his The video image of him which seemed to be extraordinarily clear Overwhelming. So in other words, what about overwhelming evidence of guilt? How does that play in? Well, the the overwhelming evidence of guilt was what they found in the trailer. It wasn't his face on the video well It they they captured a video of the robber. There was a still shot. There was there was a video that was shown Well, I guess your argument is it doesn't go to all the convictions Right, so Is not overwhelming evidence of guilt of all the offenses for which he was convicted it may be overwhelming evidence of guilt of Robbing the deli I was convicted of more offenses than that right reasonable minds may differ, but I would say that the the video the quality of the video was not sufficient to Establish that that he was the guy Yeah No, I don't I don't think there's any further questions from the panel sir But we again we took a lot of your time with our question. So we'll give you an opportunity to wrap up Sure, and I just on me on the other substitution issue. I won't spend a whole lot of time On that. I think that you know, there was some evidence that they were they were communicating they were communicating at trial and they were But we don't really frankly know the quality of those communications, but what we do know is that Mr. Henderson felt unprepared to testify and so That provides some clue that that, you know, they really hadn't communicated enough to the extent that he felt prepared to Testify and so that that gives some indication that really the the extent of their communication was not great And I really think that Miss Perini Abbott in each of these hearings was quite clear that you know, the communication is broken down Yeah, we did talk probably early in the case about some things that pertain to the suppression motion But for all intents and purposes, we've stopped talking and we haven't talked since you know, whenever so the the big picture is the communication had broken down and He should have been given another attorney Thank you, thank you for your excellent briefing and advocacy, thank you both for your patience with our questions We'll take that matter under advisement and stand in recess Thank you
judges: Wallach, CHRISTEN, HURWITZ